IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JESSE COGILL, | ) | 8:15CV319 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DR. CARABINE, MECHELLE | ) | |
| CAPPS, and JOHN DOES, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on initial review of Jesse Cogill's Complaint (Filing No. 1). For the reasons discussed below, the court finds that Cogill's Complaint does not state any claims on which relief may be granted. On the court's own motion, Cogill will be provided an opportunity to file an amended complaint.

## I. SUMMARY OF COMPLAINT

Cogill brings this action under 42 U.S.C. § 1983, against Dr. Carabine, a prison doctor at the Tecumseh State Prison ("TSP"), and against Mechelle Capps, the deputy warden of the TSP. He alleges claims under the First, Eighth, and Fourteenth Amendments. (Filing No. 1 at CM/ECF pp. 10-14.)

Cogill alleges he has a long history of mental illness and prison misconduct reports. (Filing No. 1 at CM/ECF p. 5.) In 2012, Cogill began taking Wellbutrin, a "mental health medication." Cogill alleged the Wellbutrin improved his coping skills and helped treat his bipolar disorder, depression, and racing thoughts. (Filing No. 1 at CM/ECF pp. 5-6.) On March 14, 2014, prison officials approved Cogill's request to discontinue the Wellbutrin. Cogill claims he asked to discontinue this medication

1

because he "was doing so well [he] wanted to see [if he] could [] cope without it." (Filing No. 1 at CM/ECF p. 6.)

On May 6, 2015, Cogill asked Dr. Carabine to prescribe Wellbutrin. Cogill explained to Dr. Carabine that he had recently seen an outside medical provider who "ordered" Wellbutrin to treat "the mental problems [Cogill] was displaying." However, Dr. Carabine refused to prescribe Wellbutrin, explaining inmates in prison use it "to get high." (Filing No. 1 at CM/ECF p. 7.) Dr. Carabine also stated he was not taking anyone off Wellbutrin or putting anyone on Wellbutrin. (Filing No. 1 at CM/ECF p. 8.) Cogill alleged the following exchange occurred between Cogill and Dr. Carabine during this same conversation:

> 35. I told Dr. Carabine that if he wasn't going to treat my mental health illnesses serious than I had no reason to talk with him anymore.
>
> 36. Dr. Carabine then told me that's fine I will just stop all your other mental medications to.
>
> 37. I told Dr. Carabine if he did that I would come find him when I got out of prison, and then left.

(Filing No. 1 at CM/ECF p. 8.) Immediately following this exchange with Dr. Carabine, Cogill filed a grievance against Dr. Carabine. (Filing No. 1 at CM/ECF p. 8.)

On June 1, 2015, Cogill's mental health medications were discontinued. Cogill claims in this action that Dr. Carabine discontinued Cogill's medications because Cogill filed a grievance against him. However, Cogill also alleged that Dr. Carabine reported he discontinued Cogill's medications because Cogill refused "blood draws." (Filing No. 1 at CM/ECF p. 9.) Cogill does not dispute that he refused these blood draws. In addition, the documents attached to Cogill's Complaint reflect a prison

2

official warned Cogill on May 23, 2015, that all of his medication would be discontinued if he continued to be noncompliant with the required blood draws. (Filing No. 1 at CM/ECF p. 22.) Finally, Cogill alleged Defendant Capps advised him his medications were discontinued because he refused "draws to check levels." (Filing No. 1 at CM/ECF p. 9.)

On July 14, 2015, Cogill met with a different prison doctor who prescribed the medications Dr. Carabine discontinued on June 1, 2015, and also ordered one additional medication. (Filing No. 1 at CM/ECF p. 10.)

Cogill alleges Capps and Dr. Carabine acted with deliberate indifference to his serious medical needs. In addition, he alleges Dr. Carabine retaliated against him and violated his rights under the Equal Protection Clause of the Fourteenth Amendment.

## II. STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

**A.** **Eighth Amendment**

Cogill complains Dr. Carabine acted with deliberate indifference to his serious medical needs when he refused to prescribe Wellbutrin.

To prevail on an Eighth Amendment claim, Cogill must prove that the defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes both an objective and a subjective component. Cogill must demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)). Deliberate indifference is akin to criminal recklessness, which demands more than

4

negligent misconduct. *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008).

Cogill's claim that Dr. Carabine refused to prescribe Wellbutrin fails to state a claim on which relief may be granted. A prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

**B.     Retaliation**

Cogill complains Dr. Carabine retaliated against him when he discontinued Cogill's medications.

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in protected activity; (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870 (2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)). Further, "[t]o prevail in an action for First Amendment retaliation, [a plaintiff] must show a causal connection between [the defendant's] retaliatory animus and [the plaintiff's] subsequent injury." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).

Here, Cogill can meet the first two elements of a retaliation claim. Specifically, he alleged he filed a grievance against Dr. Carabine on May 6, 2015 (the protected activity), and later, on June 1, 2015, his medications were discontinued (the adverse action).

5

However, Cogill did not allege sufficient facts to meet the third element of a retaliation claim. Specifically, his allegations do not suggest that Dr. Carabine discontinued Cogill's medication in response to his filing of the grievance. Rather, Cogill's allegations suggest Dr. Carabine discontinued Cogill's medications because Cogill advised him he did not want to see him anymore, and because Cogill refused blood draws. Cogill's assertion that Dr. Carabine's actions were retaliatory are conclusory and unsupported by the facts alleged. Therefore, Cogill has not stated a plausible retaliation claim.

**C.     Equal Protection**

Cogill complains Dr. Carabine violated his rights under the Equal Protection Clause of the Fourteenth Amendment when he refused to treat him with Wellbutrin but allowed other inmates to continue taking Wellbutrin.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Because Cogill does not allege he was a member of a protected class or that a fundamental right was violated, he must show that "similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (quoting *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998).) He also must show intentional or purposeful discrimination. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994).

Cogill's allegations do not suggest intentional or purposeful discrimination on the part of Dr. Carabine. Rather, Dr. Carabine advised Cogill "he was not going to start anybody or take anybody off the Wellbutrin[]," and his reasoning was based on inmates' tendency to use Wellbutrin as a means to "get high." (Filing No. 1 at CM/ECF p. 15.)

6

Separately, Cogill is not similarly situated to inmates who were allowed to continue treatment with Wellbutrin. Unlike Cogill, these inmates did not discontinue their use of Wellbutrin.

For these reasons, Cogill's equal-protection claim fails to state a claim on which relief may be granted.

## IV. LEAVE TO AMEND

On the court's own motion, the court will give Cogill 30 days in which to file an amended complaint that states claims on which relief may be granted against the defendants. Any amended complaint will supersede Cogill's original complaint. Thus, Cogill must not incorporate any part of the original complaint. That is, the amended complaint must stand on its own. To avoid confusion, any document Cogill submits to the clerk of the court for filing in this case must clearly display the case number.

## V. STATE-LAW CLAIMS

Cogill also sued the defendants for violations of state law. At this point in the proceedings, the court makes no determination as to the validity of these claims or whether the court has jurisdiction over them.

IT IS THEREFORE ORDERED that:

1. On the court's own motion, Cogill will have 30 days in which to file an amended complaint that states claims on which relief may be granted. Cogill must clearly designate on the face of the document that it is his amended complaint. In addition, to avoid confusion, the amended complaint must clearly display the case number.

2.  The clerk of the court is directed to set the following pro se case management deadline: March 23, 2016: check for amended complaint.

DATED this 23rd day of February, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge